## (March 24, 1981)

■ PAULINE CROTTY, Respondent, v STATE MUTUAL LIFE ASSURANCE COMPANY OF AMERICA, Appellant, et al., Defendant. — Order of the Supreme Court, New York County, entered on May 22, 1980, denying the motion of defendant, State Mutual Life Assurance Company of America, for summary judgment, unanimously reversed, on the law, and the motion granted, without costs. Plaintiff is the widow of Thomas F. Crotty and is the beneficiary named in the life insurance policy issued to Crotty by defendant State Mutual on March 20, 1977. The policy was a 25-year reducing term policy

and apparently was issued to cover a purchase-money mortgage given in connection with the purchase of a home. In his application for the policy Crotty disclosed that in 1971 he suffered some crushed vertebrae for which he was hospitalized at Montefiore Hospital and by consequence of which he was receiving Social Security benefits. In the evening of January 23, 1978 Crotty and his wife argued. Crotty left his home and went drinking. The following morning his body was found in the front seat of his car, which was in his garage. He had died from asphixiation due to monoxide poisoning. A blood analysis indicated a moderately heavy alcoholic content. From the claim application submitted by plaintiff, State Mutual ascertained, for the first time, that Crotty had been hospitalized at Booth Memorial Hospital from October 31, 1976 to November 1, 1976 and thereafter at Elmhurst General Hospital. The records of Booth Memorial indicate that he had been brought there in a comatose state, after having ingested a lethal dose of tranquilizers coupled with an intake of alcohol. That record also indicated that he had suicidal tendencies and that he had left a suicide note the week before. The Elmhurst General record diagnosed his condition as a depressive psychosis and also noted the suicide note although it concluded that he was not suicidal. Based upon this information, State Mutual refused to make payment under the policy. This suit followed. Plaintiff, in her examination before trial, conceded that days before her husband had been hospitalized at Booth Memorial he had left a note, which she no longer had, asking that his body be cremated and that his ashes be dropped in the ocean. With this as a backdrop State Mutual moved for summary judgment asserting that the Booth Memorial and Elmhurst hospitalizations were most material and, by failing to disclose such information in his application for insurance, Crotty was guilty of material misrepresentation. Thus, the issue presented is not whether Crotty committed suicide within the contestable period. It is simply whether State Mutual was induced to issue a policy which otherwise it would not have issued (by reason of the false statements contained on the application) (30 NY Jur, Insurance, § 746; *Process Plants Corp. v Beneficial Nat. Life Ins. Co.,* 53 AD2d 214). In short, did the failure to disclose deprive State Mutual of the opportunity to determine whether it would underwrite the risk. While the question of materiality is ordinarily one of fact to be determined by a jury, the seriousness with which State Mutual viewed the question of a suicide attempt is manifested by the treatment accorded to it in its underwriting manual. In that manual it is specified that where a suicide had been attempted, no life insurance policy was to be issued for at least one year. Here, by reason of the withheld information, the policy was issued less than five months after the recorded suicide attempt. Under these circumstances, materiality is established as a matter of law. Thus, the withholding of information of the prior suicide attempt was a material misrepresentation and warrants rescission of the policy. Concur — Murphy, P.J., Kupferman, Ross, Carro and Bloom, JJ.