**Yolanda YOUNG, Plaintiff–Appellant,**

v.

**BAYER CORP., Defendant–Appellee.**

No. 96–3700.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1997.

Decided Sept. 5, 1997.

Karen M. Freeman–Wilson (argued), Gary, IN, for Plaintiff–Appellant.

Timothy W. Woods (argued), Robert Scott Sanderson, Jones, Obenchain, Ford, Pankow, Lewis & Woods, South Bend, IN, for Defendant–Appellee.

Before POSNER, Chief Judge, and MANION and ROVNER, Circuit Judges.

POSNER, Chief Judge.

The district court granted summary judgment for the defendant in this Title VII suit for sexual harassment. The plaintiff's appeal presents an important question: what is the lowest level in a corporate or other institu-

tional hierarchy at which notice to an employee of sexual harassment is deemed notice to the employer?

The plaintiff was a production worker in a chemical manufacturing plant. According to allegations that we must accept as true because of the procedural posture of the case, beginning in the middle of 1989 her foreman began harassing her sexually. The details of the alleged harassment, which included offensive touchings as well as leers and lewd comments and solicitations, are not important. Between the onset of the harassment and December of 1992 the plaintiff complained at least five times to the foreman's immediate supervisor, who was the head of a department of 60 workers in which the plaintiff worked. The department head spoke to the foreman but did not report the plaintiff's complaints to the plant's personnel director, as the company's rules required him to do, and the harassment continued. In December the plaintiff complained to another supervisory employee, a subordinate of the department head, and this employee relayed the complaint to the personnel director, who took some action but, according to Young, not enough to stop the harassment. So she filed charges with the EEOC and then took six months of unpaid sick leave, which she attributes to the harassment. She is still employed by the defendant.

Had the plaintiff's harasser not been her supervisor (the foreman of her work team), the only question would be whether the company was negligent in failing to act promptly on her complaints. *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 480 (7th Cir.1996); *Baskerville v. Culligan International Co.*, 50 F.3d 428, 432 (7th Cir. 1995); *Carr v. Allison Gas Turbine Division*, 32 F.3d 1007, 1009 (7th Cir.1994); *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 490 (11th Cir.1996); *Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959, 966 (8th Cir.1993). Because he was her supervisor, the company may have a more extensive liability. We can put to one side liability on the "quid pro quo" theory of liability for a supervisor's harassment, for while it is true that the plaintiff alleges that the foreman threatened her with the loss of her job if she

did not submit to his advances, she did not advance this theory in the district court and it is therefore waived. She did preserve an argument that a company should be strictly liable for sexual harassment by its supervisors even if the harassment does not involve the supervisor's utilization of his authority, that is, even if it is no different from harassment by a coworker. But this theory a majority of the full court has now rejected, *Jansen v. Packaging Corp. of America*, 123 F.3d 490, 494–95 (7th Cir.1997) (en banc) (per curiam), so we may lay it to one side too, leaving as the only question whether the company was negligent in failing to act promptly on the plaintiff's complaints.

The answer depends on whether notice to the plaintiff's department head was notice to the company, for if it was, then it will require a trial to determine whether the company dawdled so long in responding as to indicate negligence. If it was not notice to the company—if the company did not receive notice until December, when the personnel director learned of the complaints—the company is not liable for the foreman's harassment of the plaintiff because, as the district judge found, the uncontested facts show that the personnel director acted promptly and responsibly in response to the complaints. The fact that (as the plaintiff contends) the personnel director may not have succeeded in stopping the harassment does not show that Bayer (or he) was negligent. E.g., *McKenzie v. Illinois Department of Transportation, supra*, 92 F.3d at 480. That would make the test one of strict liability.

The district judge held that notice to the department head was not notice to the company because "he was not in upper-level management" and "had no responsibility for investigating or handling charges of sexual harassment." The judge cited *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715–16 (2d Cir.1996), in support of this conclusion. See also *Torres v. Pisano*, 116 F.3d 625, 634–38 (2d Cir.1997). Although *Van Zant* is distinguishable because, so far as relates to the present case, the supervisory employee who learned of *Van Zant's* complaint was neither in her chain of command

nor responsible for reporting complaints of harassment, just as in our case of *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 320–21 (7th Cir.1992), it is not alone in distinguishing between "low-level" and "higher" management, and imputing only knowledge of the latter to the corporation. See *Faragher v. City of Boca Raton,* 111 F.3d 1530, 1538 (11th Cir.1997) (en banc); *Canutillo Independent School District v. Leija,* 101 F.3d 393, 400–02 (5th Cir.1996); *Kilgore v. Thompson & Brock Management, Inc.,* 93 F.3d 752, 754 (11th Cir.1996); *Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 777 (6th Cir.1996); *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988) (per curiam). Some cases, however, require notice merely to "management," without distinguishing among the different tiers of management. *Nichols v. Frank,* 42 F.3d 503, 508 (9th Cir.1994); *Hirschfeld v. New Mexico Corrections Department,* 916 F.2d 572, 577 (10th Cir.1990); *Hall v. Gus Construction Co.,* 842 F.2d 1010, 1015–16 (8th Cir.1988).

The question what employee or other agent must be notified of something for the corporation itself (or other principal) to be responsible for the consequences arises in many different areas of the law. It arises, for example, in regard to service of process, e.g., *Swaim v. Moltan Co.,* 73 F.3d 711, 721 (7th Cir.1996); *Baker v. Latham Sparrowbush Associates,* 72 F.3d 246, 254–55 (2d Cir.1995); *Glennar Mercury–Lincoln, Inc. v. Riley,* 167 Ind.App. 144, 338 N.E.2d 670, 675 (1975), and determinations of corporate willfulness, e.g., *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 913 (7th Cir.1994); *Kemner v. Monsanto Co.,* 217 Ill.App.3d 188, 160 Ill. Dec. 192, 201–205, 576 N.E.2d 1146, 1155–59 (1991), as well as civil and criminal liability for the misconduct of subordinates. E.g., *Hartmann v. Prudential Ins. Co.,* 9 F.3d 1207, 1210–11 (7th Cir.1993). The answer to the question suggested by the Second Circuit's recent decision in *Torres,* refining its earlier decision in *Van Zant,* is that the information must either (1) come to the attention of someone who (a) has under the terms of his employment, or (b) is reasonably believed to have, or (c) is reasonably charged by law with having, a duty to pass on the information to someone within the company who has the power to do something about it; or (2) come to the attention of such a someone. 116 F.3d at 636–38; see also *Juarez v. Ameritech Mobile Communications, Inc., supra,* 957 F.2d at 321. (If the harassment is pervasive, it can be presumed, subject we imagine to rebuttal, to have come to the attention of someone authorized to do something about it. E.g., *Zimmerman v. Cook County Sheriff's Department,* 96 F.3d 1017, 1018–19 (7th Cir.1996); *Waltman v. International Paper Co.,* 875 F.2d 468, 478 (5th Cir.1989); *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988).) In either case, the enterprise has a reasonable chance of being able to respond to the information, whether it is information that it is being sued or information that subordinate employees are committing criminal or tortious acts.

Inquiry will normally begin with ground (1)(a), identifying the person who has the duty under the employer's rules to channel complaints of sexual harassment to the employees of the company who are empowered to act upon such a complaint. Many companies appoint a "point person," usually in the personnel or (as it is nowadays often called) human resources department, to be the recipient of charges of harassment. If identified to and accessible to potential complainants, this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case. Whether and in what circumstances a company can make this the exclusive channel for complaints about harassment we need not decide in this case; but what is certain is that if the company fails to establish a clearly marked, accessible, and adequate channel for complaints, judicial inquiry will have to turn to who in the company the complainant *reasonably believed* was authorized to receive and forward (or respond to) a complaint of harassment. A department head would ordinarily be such a someone with regard to complaints of misconduct lodged by a worker in his department. If he receives such a complaint he would be obligated by elementary principles of management and good sense either to resolve the prob-

lem himself or to refer it to someone else within the company, who can.

Focus on whether the information comes to the attention of someone who ought by specification of his duties or, failing that, general norms of management to do something about it, either directly or by referring the matter to some other corporate employee, is a better, because a more concrete, a more practical, approach than asking at what level in a corporate hierarchy an employee "is" the corporation. Except in some closely held corporations, no single employee is the corporation (and anyway a corporation with only one employee would be exempt from Title VII, see 42 U.S.C. § 2000e(b)), so the approach we are criticizing is in quest of something that does not exist, making it "metaphysical" in a pejorative sense. What is possible to identify is who has the authority to terminate the harassment of which the plaintiff is complaining and did the plaintiff complain to someone who could reasonably be expected to refer the complaint up the ladder to the employee authorized to act on it. These two questions should guide the inquiry in cases in which the question is whether the plaintiff placed her complaint in a proper channel.

Under Bayer's internal policies governing harassment, the plaintiff had four authorized channels for lodging a complaint, one of which was to complain to her department head—and that is what she did. The defendant argues absurdly, in the teeth of its own policies as well as of good sense, that in a corporation the size of Bayer the head of a department of "only" 60 workers is too far down the corporate ladder to count. Most companies do not have as many as 60 workers. A company does not buy effective immunity from the duties that Title VII places on employers merely by growing to a point at which it has many layers of supervisory employees or by slotting in additional layers, so that whereas in a company with 60 employees notice to the president would clearly suffice as notice to the company, in a company of 20,000 employees notice to a supervisor of 300 employees might not be enough because there were several supervisory layers between himself and the president or board of directors. Very small companies are exempted from Title VII. 42 U.S.C. § 2000e(b). This is the first time we've heard it argued that very large ones are, too. Cf. *Consolidated Edison Co. of New York, Inc. v. Arroll,* 66 Misc.2d 816, 322 N.Y.S.2d 420, 423 (1971), rejecting a similar argument in a contract case. Bayer knew better, since as we said it authorized workers to complain to their department heads. It must have believed that the department heads would relay complaints, if the head was unable to respond effectively, to someone who could.

Since notice to the plaintiff's department head was in the circumstances notice to the company, there is a genuine issue of material fact regarding the company's negligence, and so the judgment of the district court must be reversed and the case remanded to that court for trial.

REVERSED AND REMANDED.